IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2010 APR 30  AM 11: 38

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| RICHARD SUMMERS, | § | |
| | § | CIVIL ACTION NO. |
| Plaintiff | § | |
| | § | A10CA290 LY |
| vs. | § | |
| | § | |
| BAC HOME LOANS SERVICING, L.P., | § | JURY TRIAL DEMANDED |
| F/K/A COUNTRYWIDE HOME LOANS | § | |
| SERVICING AND DOE 1 THROUGH | § | |
| DOE 5, | § | |
| | § | |
| Defendants | § | |

## FIRST AMENDED COMPLAINT

1.    Richard Summers (hereinafter "Plaintiff") by and through his counsel, for his Complaint against Defendants BAC Home Loans Servicing, LP, F/K/A Countrywide Home Loans Servicing (hereafter referred to as "BAC Home Loans Servicing") and Doe 1 through Doe 5, inclusive (collectively hereinafter "Defendants"), pleads as follows.

### INTRODUCTION

2.    Richard Summers, Plaintiff brings this first amended complaint on behalf of himself to challenge the failure of Defendant BAC Home Loans Servicing to act in good faith and to honor its agreements with borrowers to modify mortgages and prevent foreclosures.

1

3.    Plaintiff also brings this suit to stop the fraudulent attempt by Defendants to foreclose on his residence.   BAC Homes Loans Servicing is attempting to foreclose Plaintiff's residence by alleging that it has the authority required of it by Texas statute.   Plaintiff is contesting the alleged authority and is seeking verification by Defendants that BAC Home Loans Servicing has such authority.

4.    Plaintiff's claims are simple – when a large financial institution offers to modify a loan to prevent foreclosure, homeowners who live up to their end of the bargain expect that financial institution to act in good faith and to keep its promises.   Countrywide Home Loans Servicing Company and BAC Home Loans Servicing both failed to act in good faith.

**JURISDICTION**

5.    Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 because this action is between parties that are citizens of different states and the amount in controversy is greater than $75,000.

6.    Plaintiff is a citizen of the State of Texas.

7.    Defendant BAC Home Loans Servicing, LP is a limited partnership.   The general partner is BAC GP, LLC located in Calabasas, California.   Plaintiff is informed and believes

2

that all members of the limited liability company are not citizens of Texas. Plaintiff is informed and believes that the limited partner of Defendant BAC Home Loans Servicing, LP is Bank of America, N.A. Bank of America, N.A. is believed not to be a citizen of the State of Texas.

8. Doe 1 through Doe 5 are believed to be the actual owners of the promissory note executed by Plaintiff. Plaintiff has included them as Defendants pursuant to Federal Rules of Civil Procedure 17 and 19. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Defendants Doe 1 through Doe 5, inclusive, and, therefore, sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were caused by that Defendant's actions or failure to act. It is believed that these Defendants are not citizens of the State of Texas.

## VENUE AND PERSONAL JURISDICTION

9.   Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2), in that a substantial part of the events giving rise to the claim occurred in this judicial district.

10.   This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of Texas and the Western District and thus have sufficient contacts.

## FACTS

11.   Richard and Mandy Summers executed a promissory note and a Deed of Trust on October 31, 2003.   The original mortgagee was American's Wholesale Lender, P.O. Box 660694, Dallas, TX 75266-0694.   The original Trustee was CTC Real Estate Services.   The Deed of Trust listed Mortgage Electronic Registration Systems, Inc. as a beneficiary under this Security Instrument acting solely as a nominee for Lender and Lender's successors and assigns.

12.   Plaintiffs developed financial problems and declared Chapter 13 bankruptcy on April 1, 2005.   Payments were made on the loan during the bankruptcy and the bankruptcy was dismissed on April 29, 2008.

13. Following his bankruptcy, Plaintiff made a loan modification request of Countrywide Home Loans Servicing LP

4

(hereafter referred to as "Countrywide").  The modification was accepted by Countrywide on July 16, 2008 and the loan papers were sent to Plaintiff for execution and return. The documents allowed for a monthly payment of $1,745.30, subject to change if the escrow account is re-analyzed.

14.  The documents were executed by Plaintiff and returned by Plaintiff on July 29, 2008 along with a Wells Fargo cashier's check in the amount of $3,417.42.  A copy of the executed documents was never received from Countrywide by Plaintiff.  No written correspondence was ever received by Plaintiff rejecting, canceling or invalidating the loan modification.

15.  Plaintiff received additional loan modification forms from Countrywide in September, 2008.  Plaintiff was told by telephone that the second loan modification was not actually a second loan modification.  It was a continuation of the first loan modification.  This loan modification provided for a second loan to cover the delinquent amount owed on the mortgage.  The modification provided for 174 monthly payments beginning in April 1, 2009 in the amount of $129.03.  Plaintiff executed the documents and returned them on October 1, 2008.  It is believed that Countrywide received the documents on October 2, 2008.  A copy of the

executed documents was never received from Countrywide by Plaintiff.   No written correspondence was ever received by Plaintiff rejecting, canceling or invalidating the loan modification.

16.  Following the submission of the loan modification documents, Plaintiff had a telephone conversation with a Countrywide customer service representative.   The representative told Plaintiff that it was important that monthly payments be made while the loan modification documents were being processed by Countrywide.   Plaintiff was told to look at the Countrywide web site and to pay the amount indicated until such time as he began to receive monthly invoices from Countrywide.

17.  Plaintiff made payments during the months of October, 2008, November, 2008, December, 2008, and January, 2009. The payment amounts made were the amounts that were indicated on the Countrywide web site as being Plaintiff's monthly loan payments.   The payments were not posted as payments when received by Countrywide, but were instead dumped into some sort of an unapplied accumulation account. The accumulated payments were applied on February 10, 2009. Because of the way the accumulated payments were applied, the last payment made was posted by Countrywide in an

6

arbitrary manner that resulted in it being recorded as a payment in the amount of $1,582.65.

18. Following the posting and allocation of the accumulated payments, Plaintiff received a letter from Countrywide dated February 12, 2009 stating that the latest payment amount was less than the current monthly payment of $1,708.71.  The letter further stated that in the future, payments less than the total amount due would be returned to Plaintiff.   The required monthly payment amount of $1,708.71 was not the monthly payment amount that was reflected on the Countrywide web site.

19. Prior to Plaintiff's receipt of the letter dated February 12, 2009, there was a payment from Plaintiff in transit.   Plaintiff had previously tendered a monthly payment to Countrywide in the amount of $1,666.25.   This was the amount reflected on Plaintiff's monthly home loan statement as well as on Countrywide's web site as being due.   The payment was rejected by Countrywide and was returned to Plaintiff.   It was alleged by Countrywide that the payment was less than the required current monthly payment.   Plaintiff has not made a payment since this payment was rejected.

20.  In telephone calls on February 12, 2009, February 17, 2009, and February 21, 2009, Plaintiff discussed his mortgage situation with various individuals in the Countrywide foreclosure department, specifically Carol, Samaira and Rahem.  All three stated that the loan was in default, and none of the three could provide Plaintiff with any information regarding the status of his loan modifications.  Nor did any of the three have any information on how Plaintiff could communicate with anyone at Countrywide that would have any knowledge of the status of his loan modifications.

21.  In written correspondence from Countrywide Home Loans to Plaintiff dated March 9, 2009 and May 19, 2009, it is stated that Countrywide is the servicer of the home loan on behalf of the holder of the promissory note.

22.  A Notice of Foreclosure and Notice of Trustee Sale was mailed on April 16, 2009 by Countrywide Home Loans Servicing, L.P.'s attorneys, Barrett Daffin Frappier Turner & Engel, LLP.  The date of the foreclosure sale was listed as July 7, 2009.  Both documents stated the original and current Mortgagee to be Mortgage Electronic Registration Systems, Inc., as Nominee for Lender and Lenders Successors and Assigns.  The notice further states that the Mortgage

Servicer (Countrywide) is authorized to represent the Mortgagee (MERS) by virtue of a servicing agreement with the Mortgagee.

23.   Following receipt of the April 16, 2009 foreclosure notice, Plaintiff sent a letter to Defendant's attorneys, Barrett Daffin Frappier Turner & Engel.   Plaintiff asked the law firm to verify the amount of the debt.

24.   Plaintiff's request was responded to in a letter dated May 21, 2009 signed by Ryan Bourgeois of Barrett Daffin Frappier Turner & Engel, LLP.   According to Mr. Bourgeois, BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP is the servicer for Mortgage Electronic Registration Systems, Inc. as Nominee for Lender and Lenders Successors and Assigns.   The current owner and holder of the indebtedness's address is listed as 1595 Springhill Road, #310, Vienna, Virginia 22182.   Mr. Bourgeois does not identify who the actual owner of the note was at the time of his response.

25.   With the letter Mr. Bourgeois provided a copy of the original note and the deed of trust.   No endorsements or alloges were included with the copy of the promissory note provided.

26.   On June 23, 2009, Plaintiff received a letter from Defendant BAC Home Loans Servicing, LP rejecting the loan modification.   The reason provided in the letter was that the "Investor Declined Loan Modification".   It is unclear as to which loan modification was rejected by Defendant BAC Home Loans Servicing.   It is also unknown as to who the "Investor" was who declined the loan modification.

27.   A Notice of Foreclosure and Notice of Trustee Sale were mailed on July 1, 2009 by BAC Home Loans attorneys, Barrett Daffin Frappier Turner & Engel, LLP. The date of the foreclosure sale was listed as September 1, 2009.   The notice of Foreclosure stated the original and current Mortgagee to be Mortgage Electronic Registration Systems, Inc., as Nominee for Lender and Lenders Successors and Assigns.   The notice further states that the Mortgage Servicer (BAC Home Loans) is authorized to represent the Mortgagee (MERS) by virtue of a servicing agreement with the Mortgagee.

28.   On July 11, 2009, 18 days after mailing a letter rejecting a loan modification with the explanation that "Investor Declined Loan Modification", BAC Home Loans Servicing, LP, as the lender, offered a loan modification

to Richard and Mandy Summers.   Plaintiff had until August 10, 2009 to accept the offer.

29.   Said loan modification was allowed to lapse without acceptance by Plaintiff for the following reasons:   The modification extended the loan for 40 years; and the alleged loan balance of $196,966.63 was far in excess of the balance that Plaintiff believed at the time was owed on the promissory note.   In addition, from the loan modification it appears that portions of the principle would be paid twice.   Also, the offer was take it or leave it.   There was no negotiation of the terms.

30.   On July 15, 2009, while the above described loan modification offer was pending, BAC Home Loans extended a loan reinstatement offer to Plaintiff.   According to the letter, if Plaintiff paid an amount of $25,345.04 prior to the foreclosure, his loan would be reinstated and the foreclosure sale would be stopped.   Plaintiff did not have sufficient funds available to consider this offer.

31.   There was no mention of the pending loan modification in the loan reinstatement offer letter.

32.   On July 30, 2009, while the above described loan modification offer was pending, A Notice of Foreclosure and Notice of Trustee Sale were mailed by BAC Home Loans

Servicing's attorneys, Barrett Daffin Frappier Turner & Engel, LLP. The date of the foreclosure sale was listed as October 6, 2009. Both documents stated the Original Mortgagee to be Mortgage Electronic Registration Systems, Inc., as Nominee for Lender and Lenders Successors and Assigns. Both documents further stated that the Mortgage Servicer (BAC Home Loans Servicing) is authorized to represent the Mortgagee (BAC Homes Loans Servicing) by virtue of a servicing agreement with the Mortgagee.

33. On November 2, 2009, Plaintiff through his attorney Kent Leediker received an additional offer from BAC Home Loans Servicing. That offer was for Plaintiff to make monthly payments of $2,740 from December 2009 through March 2010. After making the payments totaling $10,960, BAC Home Loans in its "sole and absolute discretion" would decide if Plaintiff would receive a loan modification and, if he did, the terms under which the loan modification would be offered. No loan modification would be offered prior to Plaintiff's payment of the $10,960. Plaintiff chose not to respond to this offer.

34. A Quitclaim deed was executed by Mandy Lynn Summers to Richard James Summers on December 17, 2009 transferring her interest in the property in dispute.

35.  On March 25, 2010 BAC Home Loans Servicing as Mortgage Servicer, through its attorneys Barrett Daffin Frappier Turner & Engel, LLP., mailed a Notice of Debt Acceleration, Notice of  Foreclosure, and Notice of Substitute Trustee Sale to Plaintiff.  The documents stated the Mortgagee to be BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP.  The documents further stated that the Mortgage Servicer (BAC Home Loans Servicing) is authorized to represent the Mortgagee (BAC Homes Loans Servicing) by virtue of a servicing agreement with the Mortgagee.

36.  The previous foreclosure notices and Notices of Substitute Trustee Sale all stated that Mortgage Electronic Registration Systems Inc. was the current Mortgagee.  The March 25, 2010 foreclosure notice and Notice of Substitute Trustee Sale state that BAC Home Loans Servicing is the mortgagee.  BAC Home Loans Servicing has failed to provide any documentation that would indicate when, how, and under whose authority it assumed the position of Mortgagee of the note from Mortgage Electronic Registration Systems Inc.

### FIRST CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

37.  Defendant is obligated by contract and common law to act in good faith and to deal fairly with each borrower.

13

38.   Countrywide extended two loan modification agreements to Plaintiff.   Plaintiff executed both agreements and returned them to Countrywide.   Plaintiff did not hear anything further from Countrywide.

39.  By the actions of Countrywide and the later actions of BAC Home Loans Servicing, it does not appear that either entity was acting in good faith when the loan modification offers were extended to Plaintiff.   Countrywide's refusal and later Defendant's refusal to honor the loan modifications has sent Plaintiff into foreclosure instead of financing his mortgage as agreed.

40.  BAC Home Loans Servicing extended a loan modification offer to Plaintiff after it took over the mortgages previously serviced by Countrywide.

41.  While the above described loan modification offer was pending, a notice of foreclosure and notice of trustee sale were mailed by BAC Home Loans Servicing's attorneys, Barrett Daffin Frappier Turner & Engel, LLP.

42.  Tendering a foreclosure notice and notice of trustee sale while an offer for modification is pending removes any appearance of dealing in good faith.

43.  BAC Home Loans Servicing is stating to the Plaintiff, "either accept our offer as is or we will foreclose". That is hardly dealing in good faith.

44.  As a result of Defendant's wrongful conduct, Plaintiff has suffered various damages and injuries according to proof at trial.

45.  Plaintiff seeks compensation for his damages including restitution, costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper.

SECOND CAUSE OF ACTION

WRONGFUL AUTHORIZATION OF FORECLOSURE

46.  Plaintiff alleges that Defendant BAC Home Loans Servicing has no authority to authorize the foreclosure of Plaintiff's residence.

47.  Section 51.0025 of the Texas Property Code states that a mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if:

(1)  the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer; and

(2)  the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee

15

under a servicing agreement with the mortgagee and the name of the mortgagee and (A) the address of the mortgagee; or (B) the address of the mortgage servicer, if there is an agreement granting a mortgage servicer the authority to service the mortgage.

48. In the pending foreclosure notice, BAC Home Loans represents that it is the mortgagee.

49. Section 51.0001 of the Texas Property Code defines a Mortgagee as (1) the grantee, beneficiary, owner, or holder of a security instrument; (2) a book entry system; or (3) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record.

50. Plaintiff is unable to determine what portion of Section 51.0001 qualifies BAC Home Loans Servicing as the Mortgagee.

51. If BAC Home Loans Servicing does not qualify as the Mortgagee, Defendant has no authority to authorize the foreclosure.

52. BAC Home Loans Servicing has further failed to provide any documentation of the servicing agreement between itself as the Mortgagee and itself as the Mortgage servicer.

53.  Plaintiff seeks compensation for his damages from the wrongfully authorized foreclosure; including restitution, costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper.

54.  In committing the wrongful acts alleged herein, said Defendant acted with malice, oppression and fraud.  Said Defendant's willful conduct warrants an award of exemplary damages in an amount sufficient to punish the wrongful conduct and deter such misconduct in the future. Plaintiff contends that an amount of exemplary damages in excess of $250,000 would be appropriate.

### THIRD CAUSE OF ACTION

**VIOLATION OF TEXAS BUSINESS AND COMMERCE CODE, SECION 3.301**

55.  Upon information and belief, the mortgagee named in the Notice of Foreclosure, BAC Home Loans Servicing, is not a party entitled to authorize the foreclosure, nor is it acting under the authority of any party entitled to authorize the foreclosure.  Therefore, Defendant, the mortgage servicer, has failed to demonstrate that it has any right to administer foreclosure proceedings on this loan.

56.  The promissory note signed in connection with this loan (hereinafter "the Note") is a negotiable instrument,

as that term is defined by Section 3.201 of the Texas Business and Commerce Code. According to section 3.201, the right to enforce a negotiable instrument cannot be assigned. Instead, the negotiable instrument must be negotiated. See Tex. Bus. & Comm. Code §§ 3.201 AND 3.203; see also U.C.C. Article 3. An attempt to assign a note creates a claim to ownership, but does not transfer the right to enforce the note. See Tex. Bus. & Comm. Code §3.203 cmt. 1 ("The right to enforce an instrument and ownership of the instrument are two different concepts…a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument.")

57. Thus, enforcement of the Note is allowed only under the three circumstances provided by Section 3.301 of the Texas Business and Commerce Code. Each of these circumstances requires possession of the negotiable instrument, unless (1) the instrument has been lost, stolen or destroyed (and the enforcing party was a person entitled to enforce at the time the document was lost, stolen, or destroyed) or (2) the instrument was paid or accepted by mistake. In other words, enforcement depends on physical delivery of the note. See Tex. Bus. & Comm. Code §3.203, cmt.1, §1.201.

58.   The March 25, 2010 foreclosure notice that Plaintiff received states that BAC Mortgage Loans Servicing is acting as the mortgage servicer for BAC Mortgage Loans Servicing, the mortgagee, and that it is acting under a servicing agreement with itself.   However, upon information and belief, some entity other that BAC Mortgage Loans Servicing is the holder of the Note.   On or about May 21, 2009, Plaintiff was provided a copy of the note.   The note states that America's Wholesale Lender is the note holder.   The copy of the note provided to Plaintiff fails to demonstrate the appropriate endorsements and allonges to establish proper negotiation of the note from America's Wholesale lender to any other entity.

59.   In addition, possession or control over a deed of trust is irrelevant without a right to enforce the Note. When the note is split from the deed of trust, "the trust becomes, as a practical matter, unsecured."   See Teas v. Republic National Bank, 460 S.W.2d 233, 243 (Tex. Civ. App. 1970); *Restatement (Third) of Property (Mortgages)* §5.4 cmt. a (1997). A person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it.   See *Restatement (Third) of Property (Mortgages)* §5.4 cmt. e (1997).   "Where the mortgagee has

"transferred" only the mortgage, the transaction is a nullity and the "assignee", having received no interest in the underlying debt or obligation, has a worthless piece of paper." 4 Richard R. Powell, Powell on Real Property, §37.27[2](2000).  Therefore, although the Texas Property Code allows for non-judicial foreclosure under a deed of trust, mere possession of a deed of trust without a concurrent right to enforce the Note, does not create any authority to foreclose.

60. Plaintiff seeks compensation for his damages from Defendant's violation of Texas Business and Commerce Code, Section 3.301, including restitution, costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests the Court grant the following relief:

a.   Entering a judgment declaring the acts and practices of Defendants complained of herein to constitute a breach of the covenant of good faith and fair dealing;

b.   Granting a permanent injunction enjoining Defendants' agents and employees, affiliates and subsidiaries from continuing to harm Plaintiff;

c.   Awarding   actual   and   exemplary   damages   to   the Plaintiff;

d.   Awarding Plaintiff the costs of this action, including reasonable attorney's fees; and

e.   Granting  Plaintiff  such  other  and  further  relief  as this Court finds necessary and proper.

**JURY TRIAL DEMANDED**

Plaintiff  has  previously  demanded  a  trial  by  jury  on all issues so triable.

RESPECTFULLY SUBMITTED,

KENT M. LEEDIKER
State Bar No. 12074700
1104 Nueces, Suite 201
Austin, TX  78701
Tel: (512) 478-7463
Fax: (512) 478-1790

Attorney for Plaintiff